UNITED STATES v. MARTIN.

No. 1288.

Circuit Court of Appeals, Tenth Circuit.

Nov. 26, 1935.

Rehearing Denied Jan. 8, 1936.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (Will G. Beardslee, Director, Bureau of War Risk Litigation, Wilbur C. Pickett, Sp. Asst. to Atty. Gen., Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C., and Summerfield S. Alexander, U. S. Atty., and R. T. McCluggage, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for the United States.

J. W. Dalton, of Sedan, Kan., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

## McDERMOTT, Circuit Judge.

Appellee, as administrator of Carl Martin's estate and as beneficiary in his war risk insurance policy, brought this action to recover, in the first capacity, installments alleged to have matured at the date of his death on July 29, 1921, by reason of his total permanent disability from December 24, 1918, and in the second capacity, for installments maturing after his death. The amended petition alleged a demand "for the insurance benefits" on February 16, 1931, and a denial by the Bureau on March 12, 1931. In response to appellant's motion, the court ordered a more particular statement of the facts relied upon as a disagreement. Appellee then alleged, by way of supplemental petition, that the claim for benefits was made upon form 514 supplied by the Bureau, that he could not set out its exact contents, but that he specifically claimed therein that the insured was totally and permanently disabled at the time of his discharge.

To this definite allegation, appellant, for some reason not disclosed by the record, filed a motion to dismiss for lack of a disagreement. The court then ordered the files returned "to the Veterans' Administration at Washington, D. C., or to whatever department necessary, to further consider said case for their view as to allowing a disagreement or payment of the claim, and pending said action takes this matter under advisement until some future time to be determined by the court."

The motion remains undisposed of, and we are not advised whether the Bureau took further action. We surmise that upon the hearing of this motion appellant argued then as it does now, that the claim was so broad that it did not occur to the Bureau that appellee claimed the policy had matured by reason of disability prior to the death, and that the court desired to afford the Bureau full opportunity to allow or deny the claim as particularized in the amended petition. Nearly two years elapsed, and the Bureau not having reached a decision, an answer was filed, denying generally and specifically the disagreement.

The case was tried without a jury. The policy sued on lapsed January 1, 1919, unless the insured was then permanently and totally disabled. In July, 1921, insured was operated for a duodenal ulcer which perforated that day. There was evidence that he was afflicted with the ulcer before his insurance lapsed. But appellee's own physicians, called by him, testified to that which is common knowledge, that a duodenal ulcer is not incurable nor always totally disabling. One of his doctors testified:

"If given proper treatment in the case of an ulcer before it perforates, the prognosis for recovery is good. After the ulcer perforates we have to operate. If an operation is performed the prognosis is good early, if operated the first day the prognosis is good. * * * I have treated a number of cases of gastric ulcer and duo-

denal ulcer and in most of those cases that I have treated the patients are going ahead with their daily occupations."

The other testified:

"If he had gone ahead and taken the treatment for an ulcer, such as rest and the proper diet, his prognosis for healing that ulcer would have been better than if all he had done was take soda. I have treated a great number of patients suffering from ulcer, and I am now treating a number of patients. The great majority of those patients are going ahead with their daily occupations in life, whatever they may be. The prognosis of any perforated ulcer is not good, either whether treated medically or surgically the mortality is very high. It runs somewhere between 35 and 50 per cent."

Appellee's claim for insurance benefits was upon a form prescribed by the Bureau; it is an affidavit reciting that appellee believes himself to be the beneficiary of the insurance granted Carl Martin, who died on July 29, 1931, as a result of duodenal ulcer and pneumonia; that in support of his "claim to such insurance" he made certain statements as to the residences of the insured for five years prior to his death, and as to his surviving relatives. No statement was made as to disability prior to his death; the Bureau did not ask for a more particular statement, but simply denied the claim on the ground that the insurance lapsed subsequent to his discharge and was not in force at the time of his death.

■ At the close of appellee's case, appellant moved for judgment, which was denied and excepted to. Appellant then put on its proof, which made unavailable any error in that ruling. At the close of all the evidence, appellant again made the appropriate motion to test the sufficiency of the proof to sustain recovery. The court did not then rule on the motion, and absent such adverse ruling, there was nothing to which appellant could except. The trial court, on its own motion, took the case under advisement, stating it was very doubtful if appellee could recover. Nearly five months later, without resuming the trial,[1] the court entered judgment for appellee, reciting in the journal entry the denial of

the motion for judgment and appellant's exception thereto.

■ As ground for reversal, appellant contends that the claim for insurance benefits was not sufficiently definite to support a disagreement, and that therefore the court is without jurisdiction. Of the cases cited, one arose before the 1930 amendment, Berntsen v. United States (C.C.A.9) 41 F.(2d) 663, one claim relied on in another case was for compensation and not insurance, and the other claim was under a different policy than the one in suit, Stender v. United States (C.C.A.8) 75 F.(2d) 579, and the other case was a mere inquiry as to status with no suggestion of a claim, Chavez v. United States (C.C.A.10) 74 F.(2d) 508. On July 30, 1930, the act conferring jurisdiction on the courts "in the event of disagreement as to claims" under war risk policies, was amended to define the term "claim" as follows:

"The term 'claim' as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits." 38 U.S.C.A. § 445.

The phrase "or which uses words showing an intention to claim insurance benefits" is in the disjunctive, is broad enough to embrace the claim made here, and we are cited to no authority narrowing the ordinary meaning of the words used. The argument that the Bureau, confronted with hundreds of claims that policies had matured by reason of total and permanent disability, did not suspect that such might be the basis for the claim here made, is not persuasive enough to warrant a strained construction of the broad language used in the 1930 amendment. The Bureau, if in doubt, can inquire as to any other facts it may need before denial or approval of the claim.

Appellant further contends that appellee's own evidence disclosed nothing more than a duodenal ulcer while his insurance was in force; that his own doctors testified that such an ulcer, before perforation at least, is neither totally disabling nor incurable; and reliance is confidently placed

---

[1] The next step, disclosed by the record proper, is a journal entry of judgment which recites the appearances at the trial some months before, the submission, and the decision. No appearances are recited when the case was decided, and no special findings made. Upon argument it is stated that this case followed a procedure, which has become customary, of the clerk advising the parties by letter of the decision without resuming the trial.

upon the rule, now sustained by a legion of decided cases, that recovery cannot be had on these policies unless, while the insurance is in force, the insured is afflicted with a disease which not only totally disabled him, but from which there was no reasonable prospect of recovery if properly treated. United States v. Rentfrow (C. C.A.10) 60 F.(2d) 488.

Appellee, conceding that a disagreement is jurisdictional, argues that since a disagreement was alleged, whether it was proven is a question of fact. United States v. Wilson (C.C.A.10) 78 F.(2d) 465. Appellee then answers the argument as to the disagreement, and the argument that his own evidence disclosed neither total nor permanent disability, by pointing out that appellant took no exception to the court's ruling on the motion for judgment. Appellee relies upon the statute (28 U.S.C.A. § 875) which has prevented a review on the merits of so many jury-waived cases, often at the instance of the government.[2] That statute limits the reviewing power of this court in jury-waived cases where special findings are not made to "rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions."

■ The ruling made here was not "in the progress of the trial." An exception could not be taken until the ruling was made. A court has a right to take a case under advisement, but a litigant's right of appeal can not be cut off because the court does so. Such a rule would make the right of appeal conditional upon the consent of the trial court. To preserve the right of appeal under the inelastic command of this statute, and also the right of a court to take a case under advisement, it is necessary either that the trial be resumed, after seasonable notice to counsel, in order that the ruling be made in the progress of the trial as resumed; or, by consent, that the court allow at the trial an exception conditional upon his ruling, which may be incorporated in a bill of exceptions drawing the trial proceedings onto the record.

It seems the height of absurdity to reverse a cause to enable a ruling to be made and an exception taken "in the progress of the trial" which can be incorporated in a bill of exceptions, particularly where the record proper shows that the court, after the trial, allowed the exception. United States v. Wilson (C.C.A.10) 78 F.(2d) 465. But that is the inexorable command of this statute. Wright v. United States (C.C.A. 10) 75 F.(2d) 358. Congress enacted the statute and has let amendatory bills die in committee. We are unwilling that this judgment shall become final, in the light of our examination of the record, and the government denied its right of appeal when its counsel took every step within their power to preserve that right. Unless all parties consent that the bill of exceptions may show a ruling and exception during the progress of the trial when a jury-waived case is taken under advisement, the ruling should be made in open court after notice to the parties at a resumption of the trial. But we do not think the general statute of jeofails, 28 U.S.C.A. § 391, confers an appellate jurisdiction on this court specifically denied by the statute governing appeals in jury-waived cases.

This passage between Scylla and Charybdis can be negotiated by resuming the trial in order that appellant's motion for judgment may be ruled during the progress of the trial and appellant afforded an opportunity to except thereto if it is so advised. To accomplish that end, the judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.

---

[2] In six cases in our court the government successfully prevented a review on the merits of judgments against plaintiffs on war risk policies, in at least one of which liability was clear. White v. United States (C.C.A. 10) 48 F.(2d) 178; Gawf v. United States (C.C.A. 10) 48 F. (2d) 182; Davis v. United States (C.C. A. 10) 67 F.(2d) 737; Greenway v. United States (C.C.A. 10) 67 F.(2d) 738; McLeod v. United States (C.C.A. 10) 67 F.(2d) 740; Kolton v. United States (C. C.A. 10) 67 F.(2d) 741. But it did not appear in those cases that the losing party had done all he could to save his rights.